UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ROBERT PERREAULT and HEIDI PERREAULT, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO. 1:06-cv-1099-DFH-WTL |
| PRIME HOSPITALITY GROUP, a Global Hyatt Affiliate doing business as AMERISUITES, | ) ) ) ) ) | |
| Defendant. | ) ) | |
| RAYMOND WILLIAMS and DEBRA WILLIAMS, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO. 1:06-cv-1100-DFH-WTL |
| PRIME HOSPITALITY GROUP, a Global Hyatt Affiliate doing business as AMERISUITES, | ) ) ) ) ) | |
| Defendant. | ) | |

ENTRY ORDERING REMANDS

The issue in this case is the determination, for purposes of federal diversity jurisdiction under 28 U.S.C. § 1332, of the relevant citizenships of a limited liability company and seven limited partnerships that are its members. As explained below, the court declines the defendant's invitation to depart from controlling precedent and to adopt a new and vague standard governing the

court's jurisdiction. Complete diversity of citizenship is lacking, so the court remands this action to the state court from which it was removed.

*The Cases and the Parties*

Plaintiffs Robert Perreault and Heidi Perreault filed a negligence complaint in state court alleging that Mr. Perreault was injured by carbon monoxide poisoning when he stayed at an Amerisuites hotel in Indianapolis on June 9, 2004. The Perreaults are citizens of Missouri. Plaintiffs Raymond Williams and Debra Williams filed a nearly identical action alleging that Mr. Williams was a guest in the same hotel and was injured in the same incident. The Williamses are citizens of Rhode Island.

The complaints named as the defendant "Prime Hospitality Group d/b/a Amerisuites, a Global Hyatt Affiliate." The defendant removed the cases to this court on the basis of diversity jurisdiction. Plaintiffs had submitted settlement demands of several million dollars, thus establishing that the jurisdictional amount was in controversy in each case.

The defendant filed papers with this court stating that Prime Hospitality Corporation had owned the hotel on June 9, 2004, but that the corporation no longer existed. The corporation had merged with and into BREP IV Hotel Acquisition, LLC on October 8, 2004, which then changed its name to Prime Hospitality, LLC. Prime Hospitality, LLC later changed its name to WIH Hotels,

LLC. All of these entities were organized under Delaware law and had their principal places of business in New Jersey.

On July 24, 2006, the court issued an order to defendant to show cause no later than August 11, 2006 why these actions should not be remanded for lack of diverse citizenship because the defendant's papers did not properly show its citizenship(s). The order cited *Cosgrove v. Bartolotta*, 150 F.3d 729 (7th Cir.1998), in which the Seventh Circuit concluded that a limited liability company should be treated like a partnership for diversity jurisdiction purposes, so that it takes on the citizenship(s) of all of its members.

Defendant responded with amended notices of removal stating that ownership of BREP IV Hotel Acquisition, LLC, Prime Hospitality, LLC, and WIH Hotels, LLC has remained consistent. Defendant reported that it has been owned by "a collection of real estate limited partnerships, each of which [is] owned by hundreds of investors – none of whom have any active management role in these entities, but all of whom are merely 'passive' investors." The amended notices of removal identified seven limited partnerships formed under Delaware law with their principal places of businesses in New York as the owners. The amended notices of removal then named the "directors" of those seven limited partnerships as three individuals: John Z. Kukral, Gary M. Sumers, and Jonathan D. Gray. The amended notices of removal also identified the officers of those seven limited partnerships as four individuals: Jonathan D. Gray, William J. Stein, Dennis J.

McDonagh, and Alan Miyasaki. The amended notices of removal asserted that none of the officers or directors are citizens of Indiana. The amended notices of removal argued that the court should distinguish *Cosgrove* on its facts and should focus on the citizenships only of those persons with some degree of control over the affairs of the business. The court responded by giving defendant two more weeks to investigate further the citizenships of the partners in the limited partnerships that are members of the limited liability company.

Defendant then filed its second amended notices of removal in each case. Those documents identify a total of 129 institutional and/or individual partners in the seven limited partnerships that are members of the limited liability company. Many of those 129 investors are in turn owned by hundreds of other institutional and/or individual investors, some of which are still more limited liability companies and limited partnerships (as well as some trusts, charitable foundations, and universities).

Defendant has conceded that "at least one of 129 investors and/or their investors is a citizen of either Indiana or Missouri" in the *Perreault* case, and of either Indiana or Rhode Island in the *Williams* case. If defendant is deemed a citizen of Indiana, then 28 U.S.C. § 1441(b) bars it from properly removing the cases based on diversity. If defendant is deemed a citizen of Missouri, then jurisdiction would be lacking in the *Perreault* case; likewise in the *Williams* case if defendant is deemed a citizen of Rhode Island.

*Discussion*

The Seventh Circuit has made it crystal clear that the court must consider the citizenships of all the members of the defendant limited liability company, through the real estate limited partnerships, through all the layers of ownership until we reach only individual human beings and corporations.

In *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998), the Seventh Circuit held that a limited liability company should be treated like a partnership for diversity jurisdiction purposes. The Supreme Court has held squarely that a limited partnership has the citizenship(s) of each of its general and limited partners. *Carden v. Arkoma Associates*, 494 U.S. 185, 195-96 (1990) (rejecting alternative argument that only general partners' citizenships should be considered). The Seventh Circuit has often applied these two general rules to both limited liability companies and limited partnerships: "Thus, we have explained that 'the citizenship of unincorporated associations must be traced through however many layers of partners or members there may be.'" *Hart v. Terminex International*, 336 F.3d 541, 543 (7th Cir. 2003), quoting *Meyerson v. Harrah's East Chicago Casino*, 299 F.3d 616, 617 (7th Cir. 2002); accord, *e.g.*, *Belleville Catering Co. v. Champaign Market Place, L.L.C.*, 350 F.3d 691, 692 (7th Cir. 2003) (ordering dismissal for lack of jurisdiction and imposing sanctions on counsel).

Earlier this year, the Seventh Circuit gave these instructions, which apply here:

> The citizenship of a limited liability company is that of its members, see *Cosgrove v. Bartolotta*, 150 F.3d 729 (7th Cir.1998), and its members may include partnerships, corporations, and other entities that have multiple citizenships. See *Carden v. Arkoma Associates*, 494 U.S. 185 (1990). A federal court thus needs to know each member's citizenship, and if necessary each member's members' citizenships.

*Hicklin Engineering, L.C. v. Bartell*, 439 F.3d 346, 347-48 (7th Cir. 2006); accord, *Mutual Assignment and Indemnification Co. v. Lind-Waldock & Co., LLC*, 364 F.3d 858, 861 (7th Cir. 2004) ("Lind-Waldock is a limited liability company, which means that it is a citizen of every state of which any member is a citizen; this may need to be traced through multiple levels if any of its members is itself a partnership or LLC.").

Under these principles, the court must remand both the *Perreault* and *Williams* cases because the defendant is a citizen of Indiana (the forum state) and thus could not remove, and/or because the defendant is also a citizen of the plaintiffs' states of citizenship.

To avoid this result, defendant relies on *Navarro Savings Association v. Lee*, 446 U.S. 458 (1980). The plaintiffs in *Navarro Savings* were the eight trustees of a Massachusetts business trust. All eight were human beings who were citizens of Massachusetts. The defendant was a citizen of Texas. The shareholders of the business trust included some Texas citizens. The issue was whether the citizenship of the business trust would be governed by the citizenships of its trustees or of its shareholders. The Supreme Court held that the trustees'

citizenships controlled because the trustees had title to and controlled the assets in question. 446 U.S. at 465. "For more than 150 years, the law has permitted trustees who meet this standard to sue in their own right, without regard to the citizenship of the trust beneficiaries. We find no reason to forsake that principle today." *Id.* at 465-66.

In this case, defendant draws from *Navarro Savings* the teaching that the courts should determine citizenship by identifying the real parties in interest, who would benefit from a victory or be harmed by a loss in the litigation. As defendant sees the issue here, its directors and officers actually manage the defendant and this litigation and are comparable to the trustees in *Navarro Savings*. (Defendant has not provided any direct explanation of where losses would fall. It points out that its owners are all protected from direct liability for the defendant's debts.)

The Supreme Court's opinion in *Navarro Savings* relied on the long line of precedents dealing with trusts, and expressly rejected the defendant's effort to rely on the rules applicable to business entities such as partnerships. "The Court never has analogized express trusts to business entities for purposes of diversity jurisdiction." 446 U.S. at 463 n.10. In other words, this court could extend the reasoning of *Navarro Savings* to this case only by disregarding the *Navarro Savings* Court's own cautions about the limits of its reasoning (and by failing to follow the cases cited above).

In fact, the Supreme Court itself has already rejected such an extension of *Navarro Savings* in the limited partnership case that actually controls here, *Carden v. Arkoma Associates*. The Court explained in *Carden* that *Navarro Savings* depended on the line of trustee cases stretching more than 150 years. 494 U.S. at 191. The Court expressly rejected the analogy offered here: "that, just as business reality is taken into account for purposes of determining whether a trustee is the real party to the controversy, so also it should be taken into account for purposes of determining whether an artificial entity is a citizen. That argument is, to put it mildly, less than compelling." *Id.* at 192. The Court added two pages later that *Navarro Savings* was "irrelevant" to the limited partnership issue, "since it involved not a juridical person but the distinctive common-law institution of trustees." *Id.* at 194.

Recognizing that the states are continuously creating new legal forms for businesses, the *Carden* Court gave explicit guidance to litigants and lower courts as they confront "a wide assortment of artificial entities possessing different powers and characteristics, and composed of various classes of members with varying degrees of interest and control." 494 U.S. at 197. Before limited liability companies became so popular a vehicle as they are now, the Court warned:

> Which of them is entitled to be considered a "citizen" for diversity purposes, and which of their members' citizenship is to be consulted, are questions more readily resolved by legislative prescription than by legal reasoning, and questions whose complexity is particularly unwelcome at the threshold stage of determining whether a court has jurisdiction. We have long since decided that, having established special treatment for corporations, we will leave the rest to Congress; we adhere to that decision.

*Id.* That lesson applies directly to cases dealing with limited liability companies.[1]

The court recognizes that defendant has offered respectable arguments for a different approach, one that has garnered several votes on the Supreme Court in Carden, for example. The approach taken by the Supreme Court majority and Seventh Circuit, however, is controlling here. The controlling approach also has the virtue of giving parties and courts clear lines to apply, so they can determine relatively quickly and cheaply at the beginning of the case whether it belongs in federal court. "Jurisdiction should be as self-regulated as breathing; . . . litigation over whether the case is in the right court is essentially a waste of time and resources." David P. Currie, *The Federal Courts and the American Law Institute, Part I,* 36 U. Chi. L. Rev. 1, 1 (1968), quoted in *Navarro Savings Ass'n v. Lee*, 446 U.S. at 464 n.13. The approach advocated by defendant in this case would turn the threshold jurisdictional inquiry in limited liability company and limited partnership cases into a factual and legal wilderness. Under that approach, the court would be required to try to gauge the degree of myriad investors' control and risk, against standards that cannot presently be determined. That sterile inquiry would not serve any important purpose in terms of the role of diversity jurisdiction. The uncertain results would also pose a continuing threat to

---

[1] The Carden Court recognized that its decisions in this field "can validly be characterized as technical, precedent-bound, and unresponsive to policy considerations raised by the changing realities of business organization." 494 U.S. at 196. The Court chose to risk that criticism for the benefits of a relatively sharp and bright line, as it had in previous cases dealing with labor unions, and left further innovations to Congress.

plaintiffs who did not want to litigate in federal courts in the first place. Under defendant's approach, a judgment in favor of a plaintiff would remain highly vulnerable to a jurisdictional challenge on appeal, even at the instance of the party who removed the cases in the first place. These are costs and uncertainties that are not needed and not dictated by law.

One final issue must be addressed. Defendant submitted its second amended notices of removal with motions to keep them sealed. Its motions to seal these documents assert that they contain private business information. The information in question is the list of partners in the seven limited partnerships, along with their respective ownership percentages. Defendant has made no showing that the information would amount to a protected trade secret – *i.e.*, that it derives independent economic value from not being generally known to or ascertainable by other persons who could obtain economic value from disclosure or use. See Ind. Code § 24-2-3-2 (definition from Indiana's adoption of Uniform Trade Secrets Act). The court assumes that the defendant and its investors might prefer to keep the information confidential. As the Seventh Circuit has commented, "many litigants would like to keep confidential the salary they make, the injuries they suffered, or the price they agreed to pay under a contract, but when these things are vital to claims made in litigation they must be revealed." *Baxter International, Inc. v. Abbott Laboratories*, 297 F.3d 544, 547 (7th Cir. 2002), citing *Union Oil Co. of California v. Leavell*, 220 F.3d 562, 567 (7th Cir. 2000).

The dispositive documents in a court become part of the public record unless they fall into just a handful of categories: genuine trade secrets, legally privileged information, and information required by statute to be kept confidential. *Baxter International*, 297 F.3d at 546. In this case, defendant and its investors have presented information to a public court that issues public decisions. They have done so in an attempt to persuade the court to accept jurisdiction of these cases against defendant. See generally *Union Oil Co. of California*, 220 F.3d at 568 (7th Cir. 2000) (explaining importance of public access to court records, and stating that only genuine trade secrets or information required by law to be kept confidential may be held in "long-term confidence" when filed with courts); *Citizens First National Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943 (7th Cir. 1999) (vacating overly broad order sealing portions of record). The idea that the citizenships of the persons and entities relevant to the court's very jurisdiction should be kept confidential has no support. And the Seventh Circuit has cautioned against trying to keep such information secret: "To determine the citizenship of the Edward Darman Company Limited Partnership, we need to know the name and citizenship(s) of its general and limited partners." *Guaranty National Title Co. v. J.E.G. Associates*, 101 F.3d 57, 59 (7th Cir. 1996). Accord, *Hicklin Engineering, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006) ("A federal court thus needs to know each member's citizenship, and if necessary each member's members' citizenships."). Accordingly, the defendant's motions to file the amended notices of removal under seal are hereby denied.

The amended notices of removal in both cases shall be removed from seal, and both cases shall be remanded to the Marion Superior Court from which they were removed.

So ordered.

Date: September 8, 2006

_____
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Sonia S. Chen
BINGHAM MCHALE
schen@binghammchale.com

Timothy J. Hambidge
OLSEN WHITE HAMBIDGE & WILLIAMS
tjh@owhw.net

James M. Hinshaw
BINGHAM MCHALE LLP
jhinshaw@binghammchale.com

Jill Dewig Wesch
OLSEN WHITE HAMBIDGE LLP
jdw@thelawteam.net